[Civ. No. 6481.   Fourth Dist.   Sept. 5, 1961.]

TRACILLE RUTH CLARK, Appellant, v. ROBERT LINCOLN CLARK, Respondent.

374

Holliday, Folsom & Winters and David S. Folsom for Appellant.

Hunter M. Muir for Respondent.

SHEPARD, J.—This is an appeal by plaintiff (appellant herein) from a judgment of nonsuit, granted on motion of defendant Robert Lincoln Clark (respondent herein) after appellant's opening statement. (Wherever the term "respondent" is hereinafter used, it will refer to said Robert Lincoln Clark. The other defendants, Bank of America and The Ryan Aeronautical Company, did not participate in the trial or this appeal, simply abiding the decision of the court.)

FACTS

The facts as shown by the record before us are substantially as follows: Respondent herein commenced an action for divorce (San Diego County Civ. No. 200221), listing therein certain community property of an alleged value of $1,500. Appellant herein cross-complained in that action, repeating substantially the same allegations as to community property as were contained in the complaint. That action was tried as to the community property relations on the basis of those allegations. The possibility of ownership by the community of an interest in "The Ryan Retirement Trust," hereinafter called "Trust," of The Ryan Aeronautical Company, respondent's employer, was never mentioned in that proceeding nor in any way brought to the attention of the trial court nor of appellant herein. There is nothing in the record to

indicate that appellant had any intimation of the existence of the Trust such as would impose upon her the duty to inquire further. On February 24, 1956, at the close of the trial in that case, the trial court ordered judgment granting divorce to each party and dividing the community property described in the pleading equally. An interlocutory judgment was entered in accordance therewith March 12, 1956.

November 13, 1959, appellant herein commenced the present action, alleging that during the marriage relation respondent herein, by reason of his employment by The Ryan Aeronautical Company, did acquire a vested interest in the Trust; that the rights of the parties in such Trust were not disposed of by the decree in said action No. 200221; that a controversy had arisen over her rights therein. She prayed for a determination of the rights of the parties in said Trust. At the time of the commencement of trial in the present action, appellant made an opening statement to the essential effect that at the time of the original trial and judgment in action No. 200221, this appellant did not know of the existence of the Trust; that it was not mentioned in her pleadings, evidence or the judgment; that the existence of the Trust was concealed from appellant ''whether intentionally or negligently, we, of course, have no way of knowing''; that it was the community property of the parties hereto and had a value of $18,678.26. Thereupon respondent moved for judgment in his favor on the opening statement, stating as the grounds therefor that the pleadings did not state a cause of action and that the subject matter in dispute was res judicata.

After further discussion, in which the trial court pointed out to appellant the deficiencies in her original complaint, appellant was given permission to make a further offer of proof and to amend her complaint in accordance therewith if she could thereby state a cause of action. Appellant again offered to prove the existence of the Trust, the vested right therein acquired through earnings by respondent during the marriage relation; the value thereof; that appellant at the time action No. 200221 was proceeding had no knowledge of the existence of said Trust; that respondent had never told her of its existence; that appellant for about two years prior to said proceedings in action No. 200221 had been under adjudication of incompetency and had been restored to a competent status just before said proceedings commenced. Appellant then requested permission to amend the complaint

to conform to such offer of proof. Respondent reiterated that his motion was for judgment on the opening statement, and was not a motion for judgment on the pleadings. The trial judge thereupon stated that even though the complaint were amended to conform to such offered proof, it would still be insufficient as a matter of law to support any relief to appellant. The motion for nonsuit was granted, and judgment entered accordingly. The propriety and timing of the motion for nonsuit were not questioned in the trial court, nor in the points on appeal presented to this court.

## THE PROBLEM

·The only question presented by appellant on this appeal is whether or not the facts set forth in the opening statement would, if properly pleaded, support a judgment in appellant's favor.

## NONSUIT

Provision for nonsuit on plaintiff's opening statement is made by Code of Civil Procedure, section 581c, when it clearly appears from all the facts alleged in the complaint and the statements by counsel, and all favorable inferences that may be reasonably deduced therefrom, that no cause of action exists. (*Mendez* v. *Pacific Gas & Elec. Co.*, 115 Cal. App.2d 192, 196 [3] [251 P.2d 773] ; *Paul* v. *Layne & Bowler Corp.*, 9 Cal.2d 561, 564 [1] [71 P.2d 817] ; *Greenwood* v. *Mooradian*, 137 Cal.App.2d 532, 537 [1a] [290 P.2d 955].)

Basically, this is the same rule that governs on a motion for nonsuit at the close of plaintiff's evidence, so that before the trial court may grant the motion it must first give "to plaintiff's evidence all the value to which it is legally entitled, indulging every legitimate inference which may be drawn from such evidence, . . ." (*Aguirre* v. *City of Los Angeles*, 46 Cal.2d 841, 844 [4] [299 P.2d 862].)

## JUDGMENT VACATED FOR FRAUD

In *United States* v. *Throckmorton*, 98 U.S. 61 [25 L.Ed. 93], which has been recognized as the leading United States Supreme Court case on the subject, it is stated, at page 95 [25 L.Ed.] : "Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by [citing certain examples] —these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and

annul the former judgment or decree, and open the case for a new and a fair hearing. [Citations.]

"In all these cases and many others which have been examined, relief has been granted, on the ground that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting *all* of his case to the court." (Italics ours.)

In *Pico* v. *Cohn*, 91 Cal. 129 [25 P. 970, 27 P. 537, 25 Am. St.Rep. 159, 13 L.R.A. 336], which has long been recognized as a leading case in California, the court said at page 133. ". . . we think it is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony. The reason of this rule is, that there must be an end of litigation; and when parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, *or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy.*" (Italics ours.)

Both the *Throckmorton* and *Pico* cases have been cited innumerable times by the courts of this and other states, approving the above-quoted principles.

In more recent times, in *Westphal* v. *Westphal*, 20 Cal.2d 393, 397 [1] [126 P.2d 105], the court said: "The final judgment of a court having jurisdiction over persons and subject matter can be attacked in equity after the time for appeal or other direct attack has expired only if the alleged fraud or mistake is extrinsic rather than intrinsic. [Citations.]

Fraud or mistake is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court."

### EXTRINSIC AND INTRINSIC FRAUD

From the foregoing, it is entirely clear that equitable attacks on judgments that have become final may be based only on extrinsic fraud. Counsel, in their briefs, recognized this, and all of their arguments revolve around the question of what can be classified as extrinsic fraud for which courts will grant relief. In the *Throckmorton* case the court suggests as examples of extrinsic fraud, being kept away from court by false promises, no knowledge of the suit, being kept in

ignorance by the acts of the plaintiff and connivance of attorneys; but these, of course, were not intended to be exclusive, nor to be part of the rule itself. In literally hundreds of cases the courts have laboriously explained how intrinsic fraud may not be used to disturb a prior judgment. Brief examples are found in the following cases: *Dillard* v. *McKnight,* 34 Cal.2d 209, 214 [3] [209 P.2d 387, 11 A.L.R.2d 835] : "But the application of the principle of res judicata in a given case depends upon an affirmative answer to these three questions: Was the issue decided in the prior adjudication identical with the one presented in the subsequent litigation? Was there a final judgment on the merits? Was the party against whom the principle is invoked a party or in privity with a party to the prior adjudication?"; *Estate of Bialy,* 169 Cal.App.2d 479 [337 P.2d 511] ; *Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 18 [1] [193 P.2d 728] : ". . . equitable relief will be denied where it is sought to relitigate an issue involved in the former proceeding on the ground that allegations or proof of either party was fraudulent or based on mistake, but such relief may be granted if the party seeking it was precluded by fraud or the mistake of the other party from participating in the proceeding or from fully presenting his case"; *People* v. *Egan,* 73 Cal.App.2d 894, 899 [7] [167 P.2d 766] : " ' "In this state it is the settled law that a judgment cannot be set aside because it is predicated upon perjured testimony or because material evidence is concealed or suppressed. The fraud which is practiced in such cases upon both the court and him against whom the judgment is pronounced is not such fraud as is extrinsic to the record; and it is only in cases of extrinsic fraud that such relief may be had. [Citations.]" ' "; *Howard* v. *Howard,* 27 Cal.2d 319, 321 [1] [163 P.2d 439] : "A party who has been given proper notice of an action, however, and who has not been prevented from full participation therein, has had an opportunity to present his case to the court and to protect himself from any fraud attempted by his adversary. [Citations.] Fraud perpetrated under such circumstances is intrinsic, even though the unsuccessful party does not avail himself of his opportunity to appear before the court. Having had an opportunity to protect his interest, he cannot attack the judgment once the time has elapsed for appeal or other direct attack"; *Gale* v. *Witt,* 31 Cal.2d 362, 366 [1] [188 P.2d 755].

However, an analysis of the various pronouncements quite clearly shows that although the general rules relating to the

meaning of extrinsic and intrinsic fraud are well settled, the application of them in any individual case requires a close and careful examination of the particular facts in that case. As was said in *Jorgensen* v. *Jorgensen, supra,* page 19:

"The terms 'intrinsic' and 'extrinsic' fraud or mistake are generally accepted as appropriate to describe the two different categories of cases to which these policies of the law apply [citation]. They do not constitute, however, a simple and infallible formula to determine whether in a given case the facts surrounding the fraud or mistake warrant equitable relief from a judgment. [Citations.] It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case."

### CONCEALMENT BY A FIDUCIARY

With the foregoing principles in mind, particular attention must be given to the special problem involving those who act in a fiduciary capacity, such as husband and wife. For example, in *Milekovich* v. *Quinn,* 40 Cal.App. 537 [181 P. 256], the parties were involved in a fully adversary proceeding. Negotiations for settlement took place. The wife repeatedly told her attorneys she believed her husband had large values in securities. The husband merely failed to reveal part of the community property. A settlement was reached and judgment entered. In affirming the judgment granting her relief in a later suit to set aside that judgment, the court said, at page 547:

"She does not seek relief from the judgment because it was based on perjured testimony, but because she was induced by false statements to enter into a contract out of court by which she was precluded from submitting to the court the very questions which but for the contract would have been submitted to judicial investigation."

In *Taylor* v. *Taylor,* 192 Cal. 71, 79 [8] [218 P. 756, 51 A.L.R. 1074], the court said: "If, in the course of a suit for divorce, the parties have agreed upon a certain plan of division of the community property, and the wife, relying upon the false representations of the husband, was wronged in such division, the court in another action will annul the division, and decree another, notwithstanding that the wife and her

attorney had, in the first instance, the means of knowing the true state of facts.''

In *Boullester* v. *Superior Court*, 137 Cal.App. 193 [30 P.2d 59], the wife's practice of fraud in concealing community assets was held sufficient ground to maintain an action on behalf of the husband to set aside the resulting judgment. In *Dandini* v. *Dandini*, 120 Cal.App.2d 211 [260 P.2d 1033], involving a fully adversary proceeding, it was held that the concealment by the husband of the existence of certain community assets was sufficient to support an action by the wife to set aside the resultant decree.

The separate confidential and fiduciary relationships between husband and wife are carefully discussed in *Vai* v. *Bank of America*, 56 Cal.2d 329, 337-338 [15 Cal.Rptr. 71, 364 P.2d 247], where it is pointed out that the fact of the husband's management and control of the community property places him in the position of trustee for his wife as to her community interest, which trust continues even after separation. Even the pendency of a divorce action does not of itself change this situation and it is a part of the husband's duty as possessory trustee to account to her in negotiations for property settlement. Thus, even though the confidential relationship has ceased, the fiduciary relationship continues for the time that the husband retains control. As was there said : ''The key factor in the existence of a fiduciary relationship lies in control by a person over the property of another.'' (See also *Flores* v. *Arroyo*, 56 Cal.2d 492, 494-495 [1] [15 Cal.Rptr. 87, 364 P.2d 263].)

### CONCEALMENT AS EXTRINSIC FRAUD

In the case at bar, the husband at all times that he retained control of the property in contention, remained a trustee for the wife. In this capacity it was his duty to advise her of the existence of the property. Once he had apprised her of its existence, the question of whether it was, in truth, community property could be litigated, and her opportunity to so litigate it would fully foreclose her from any future attack on a judgment arising from an adversary proceeding. However, since she never knew of the existence of the property, she never had an opportunity to assert or defend her rights in the action, and his concealment amounted to the type of extrinsic fraud for which equity will grant relief. His testimony in the trial or his alleged perjury therein is not the fraud upon which the court bases its action, but,

rather, the fraud of concealment of the existence of the property before or during the pendency of the action so that the court was never allowed to pass upon the question of her rights. In other words, by his concealment when he was in duty bound to speak, she was left in complete ignorance, and the ownership of the concealed property was never fairly before the court for adjudication.

The fact that the pleadings in case No. 200221 appear at first blush to be adversary in character does not change the principle set forth in *Vai* v. *Bank of America, supra, Flores* v. *Arroyo, supra,* and other cases. It is perfectly apparent that appellant herein simply accepted, without dispute, the allegation of respondent herein. Since she knew nothing of the Trust interest, due to concealment by the fiduciary husband, there was nothing to cause her to inquire further, and such proceeding was not truly adversary as to such unknown Trust interest. The suggestion has been made in some cases that under such a rule the husband or wife so concealing could never be certain of the future title to the property so concealed. We see no reason in the modern view of property relations between husband and wife, why a person who conceals his or her property from the opposing spouse should be vouchsafed any such certainty. Judgments between those standing in a fiduciary capacity to each other should be based upon revelation to each other of the basic existence of the rem sought to be litigated. If that existence is revealed and title litigated, then the judgment is, in truth, the act of a court in which each party has had a chance to speak on his own behalf on *all* the issues.

We are unable to find support for respondent in the authorities cited by him. The ruling in *Metropolitan Life Insurance Co.* v. *Welch,* 202 Cal. 312 [260 P. 545], was based on the fact that the wife in a default case secured a judgment in excess of the relief permitted by her allegations and prayer. There is nothing in the opinion in that case stating that the husband was guilty of fraudulent concealment. In fact, it is indicated that she continued to pay the premiums on a policy of insurance there in dispute. *Rudy* v. *Slotwinsky,* 73 Cal. App. 459 [238 P. 783], merely reiterates the rule that equity will not grant relief for intrinsic fraud. The case involved a controversy between attorneys as to whether or not proper notice had been given in the overruling of a demurrer, and the decision was factual. In *Jorgensen* v. *Jorgensen, supra,* the wife rejected an offer of examination of a list of all property

and was not permitted thereafter to reopen the judgment, there being factually no fraud. In *Harrold* v. *Harrold,* 127 Cal.App.2d 582 [274 P.2d 183], the dispute was over allowance of an income tax credit, the existence of which plaintiff was fully aware at the time of litigation. In *Burch* v. *Hibernia Bank,* 146 Cal.App.2d 422 [304 P.2d 212], there was alleged concealment of matters of public record relating to bankruptcy proceedings but it did not appear that even if true, the facts alleged would suffice for relief. *Spurr* v. *Daniels,* 152 Cal. App.2d 867 [313 P.2d 621], involved a Nevada default divorce decree obtained by the wife, on a complaint which alleged there was no community property. In the cited case there was no allegation of concealment by defendant or lack of knowledge by plaintiff. *Hogan* v. *Hogan,* 131 Cal.App.2d 281 [280 P.2d 64], involved a judgment in a previous action to quiet title, in which false testimony was alleged to have been given and material evidence concealed. The action was wholly adversary and the existence of the property fully known and the rights fully litigated.

We have not herein discussed, nor intended to discuss, the position of innocent purchasers for value nor relief sought under Code of Civil Procedure, section 473, for such matters are not involved in the present case.

### COMMUNITY CHARACTER OF TRUST

Respondent makes the additional contention that in any event the Trust cannot be community property. This was not set forth as a ground of motion in the trial court. Appellant, in her opening statement and in her complaint, claimed it to be community property and claimed that there was a vested interest. It may well result in the trial of this cause that the evidence will show that the Trust interest was not, in fact, community property, or it may appear that she knew, prior to the former action, of the existence of the Trust interest, but on the basis of the record before us, we cannot so determine for we cannot know what the detail of proof will demonstrate.

On the basis of the record before us, appellant should have been allowed to amend her complaint and the cause should have been tried on its merits.

The judgment is reversed.

Griffin, P. J., and Coughlin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 1, 1961.